**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Beverly MANN et al., Appellees.**

Court of Appeals of Kentucky.

March 5, 1965.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Harold K. Huddleston, Elizabethtown, Reed D. Anderson, Atty., Madisonville, for appellant.

E. E. Hubbard, Fulton & Hubbard, Bardstown, for appellees.

PALMORE, Judge.

In connection with a reconstruction and partial relocation of U. S. Highway 62 the state in this proceeding condemned about 8½ acres of appellees' 394-acre tract (which we shall call the Mann farm) located 1¼ miles west of Bardstown. Both sides appealed from a county court judgment awarding $5675, whereupon a jury in circuit court fixed the amount of recovery at $11,400 and judgment went accordingly. The state appeals.

Before the taking the farm lay 104 acres on the north side and 290 acres on the south side of U. S. 62 and was more or less flush with the highway. A good portion of the new road is on a 28-foot fill, which creates problems of access between the two portions of the farm and its various facilities. A barn, corn crib and old log tenant house were situated within the new right-of-way and were destroyed.

The state introduced two valuation witnesses, both of whom said they had used comparable sales in arriving at their estimates. However, neither of them was permitted to give the prices involved in the comparable sales.

The witness McCarter cited a 1959 sale of 108 acres located on U. S. 31E about three miles south of Bardstown. He said the improvements were in fair condition, the land was similar, the location was equal, and he considered it a fair comparison. When he was asked what was the price paid an objection was sustained. According to an avowal, he would have answered $24,000, which would amount to $222 per acre. His appraisal of the Mann farm before the taking was $175 per acre.

The witness Miller cited a 1960 sale of 83 acres located on U. S. 31E about two miles from Bardstown. He did not further describe the property but said it was sufficiently comparable that a fair and reasonable comparison could be made. Upon objection he was not permitted to give the price paid, and avowed that it was $15,250, or slightly under $184 per acre. He evaluated the Mann farm before the taking at $185 per acre.

The landowners contend that the exclusion of this evidence was not erroneous because the preliminary testimony did not provide sufficient details to indicate comparability and did not show that the sales were voluntary. They submit also that in any event the errors, if such, were not prejudicial, since the values put on the Mann farm by the landowners' witnesses were not materially different from those reflected by the comparable sales.

It is conceded, of course, that refusal to permit evidence of prices recently paid in private sales of comparable property is reversible error if prejudicial. Cf. Commonwealth, Dept. of Highways v. Slusher, Ky., 371 S.W.2d 851 (1963); Common-

wealth, Dept. of Highways v. Howard, Ky., 375 S.W.2d 398 (1964); Commonwealth, Dept. of Highways v. Shackleford, Ky., 380 S.W.2d 77 (1964).

As to the preliminary showing of comparability, we are of the opinion that great latitude should be allowed a professionally qualified witness, for the simple reason that unless the trial judge himself elects to testify in the case it must be presumed that the witness's judgment as to comparability is better than his. Cf. Stewart v. Commonwealth, Ky., 337 S.W.2d 880, 884 (1960); Commonwealth, Dept. of Highways v. Oakland United Baptist Church, Ky., 372 S.W.2d 412 (1963). McCarter's testimony clearly was sufficient to establish prima facie comparability. Miller's was sketchy indeed, yet we think that since the two properties to be compared were farms and were located on major highways near Bardstown he should have been permitted to give the price. Any dissimilarities could have been developed by cross-examination.

In the absence of evidence to the contrary it is presumed that the price of land sold in a transaction between private parties was fixed freely and not under compulsion. Commonwealth, Dept. of Highways v. Shackleford, Ky., 380 S.W.2d 77 (1964).

It is our conclusion that the comparable sales testimony offered by McCarter and Miller should have been admitted.

The value of the Mann farm as of a time immediately before the taking was estimated by five defense witnesses and ranged from a low of $220 to a high of $254 per acre, as against the avowal figures of $184 and $222. The jury did not receive any evidence of prices paid in comparable sales. We are unable to say that the rejected evidence would not have been helpful to the state's case. Hence we find its exclusion prejudicial.

It is further contended that because each of the valuation witnesses for the land-owners based his estimate of diminished market value on an itemization of "damage" factors their testimony (1) should have been stricken and (2) did not have enough probative value to support the verdict.

B. B. Mann, a co-owner of the property, testified that the farm had a fair market value of $100,000 before and $80,000 to $85,000 after the taking. Except for his knowledge of the tract and a general familiarity with the value of real estate in the vicinity, he expressed no special qualifications as an expert witness and was not asked by either counsel to state the factors, if any, that he took into consideration in arriving at his estimate. Thus his testimony had "some probative value." Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, 477 (1963). There was no motion (and no ground) to strike it.

The four other valuation witnesses for the landowners gave before and after values as follows:

|  | Before | After | Difference |
|---|---|---|---|
| L. P. Hubbard | $90,000 | $76,000 | $14,000 |
| J. W. Coomes | 92,000 | 77,000 | 15,000 |
| Everett Mudd | 87,000 | 72,500 | 14,500 |
| J. S. Tharp | 88,000 | 73,200 | 14,800 |

On cross-examination each of these witnesses admitted in substance that he had arrived at the "after" figure by itemizing various damage factors and subtracting the total from the "before" figure. Hubbard, for example, said that he estimated separate amounts for such items as the log cabin, corn crib, barn, inconvenience of access, gates, fencing, etc., and arrived at a total of $14,435. Coomes did the same, and came to a total of $14,870. Mudd and Tharp did not give their totals, but they used the same procedure in arriving at the "after" value. Counsel for the landowners made a valiant effort on redirect examination of these witnesses to get the horse back in front of the cart, but it is all too clear from the transcript that their opinions were founded upon improper itemization of individual "damage" factors. Commonwealth, Dept.

of Highways v. Tyree, Ky., 365 S.W.2d 472, 477 (1963); Commonwealth, Dept. of Highways v. Cardinal Hill Nursery, Ky., 380 S.W.2d 249, 253 (1964). The correct method is to ascertain the fair market value of what is or will be left after the taking and subtract it from the value of the whole property as it stood prior to the taking.

Counsel for the state made timely motions to strike the testimony of the four witnesses just mentioned. It was error to overrule them. Cf. West Kentucky Coal Company v. Commonwealth, Dept. of Highways, Ky., 368 S.W.2d 738, 743 (1963). It becomes unnecessary to determine the question of probative weight.

The judgment is reversed with directions for a new trial.